HATTIE V. SIMMONS, APPELLEE, v. WESTERN TRAVELERS ACCIDENT ASSOCIATION, APPELLANT.

FILED MAY 10, 1907.   No. 14,784.

1. **Insurance: CHANGE OF OCCUPATION.** A condition in the constitution of an accident insurance company provided for a limitation of liability, "if any member of the association shall, after becoming such, change his occupation to one classed by the executive board as more hazardous than that stated in his original application." The insured, who was a traveling salesman, lost his position, and

for a term of nearly two years lived upon his father's ranch while trying to obtain another position, but was paid no salary or other compensation. At the time of his death he was endeavoring to obtain another situation as a commercial traveler. *Held*, That he did not change his occupation to that of "stock farmer, owner or superintendent, supervising only," which was the occupation classed by the executive board as more hazardous than that of commercial traveler.

2. ———: PROOFS OF DEATH: FORFEITURE. A condition in an accident insurance policy providing for a forfeiture of the benefits unless proofs of the death of the assured are furnished within 30 days will be upheld; but, where the testimony shows notice of the death given within the required time, and due diligence, prompt action and good faith on the part of the beneficiary in making formal proof of death as soon as the requirements are made known to him, a forfeiture for the failure of a literal and technical compliance with the condition should not be declared.

3. Evidence. Action of the trial court in the admission of evidence examined, and *held* not prejudicial.

4. Evidence examined, and *held* sufficient to sustain the judgment of the trial court.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Brome & Burnett,* for appellant.

*Kennedy & Learned, contra.*

OLDHAM, C.

This was an action instituted by the plaintiff as widow and beneficiary named in a membership certificate issued by the defendant to one Harry A. Simmons, to recover the sum of $5,000, the amount provided for in the certificate on the death of a member resulting from external, violent and accidental means. The petition alleged in substance, that Harry A. Simmons, deceased, was a member in good standing of the defendant order, and had paid all assessments and dues arising under the constitution and by-laws of the order, and that on the 24th day of June, 1903, he was bitten by a rattlesnake in Live Oak

county, Texas, and death resulted from this violent and accidental means on the day following the injury; that notice of the death was served upon the defendant within 15 days thereof; that proofs of death were subsequently furnished in compliance with the constitution and laws of the order. Defendant's answer admitted the issue and delivery of the certificate of membership to Harry A. Simmons, deceased, and that plaintiff was the widow and beneficiary named in such certificate, admitted that notice of death was received by the defendant within 15 days of the death of Harry A. Simmons, and that he was a member in good standing in the order at that time. The answer then set up a provision of the constitution and by-laws of the order forfeiting the policy unless proofs of death are filed within 30 days of the demise of a member. It also pleaded an article of the constitution of the order providing, in substance, that, if a member should change his occupation to one classed by the executive board as more hazardous than that stated in his original application for membership, he should only be entitled to such benefits as might be fixed by the executive board for such increased hazard of occupation. It further alleged that at the time of his death Harry A. Simmons had changed his occupation from that of traveling salesman, and was engaged in the business and occupation "of ranch foreman, supervising stock farming, and supervising and superintending a ranch in the state of Texas, and was so engaged at the time of the alleged injuries and death." The answer then averred that under the by-laws of the order the amount of recovery for the death of a member engaged in the more hazardous occupation described was limited to $2,000. Plaintiff, by way of reply, alleged that within 15 days of the death of her husband she had procured notice to be served upon the defendant of such fact; that she had no knowledge or information of any by-law requiring proofs of death to be filed within 30 days; that in the notice of death she requested the defendant to send such blank

proofs of death as were required; that no answer was received to this communication from the defendant until the 28th day of July, when the 30 days had elapsed; that upon the receipt of defendant's letter containing a copy of the constitution and by-laws requiring proof of death, such proof was immediately procured and forwarded to the defendant and retained by it. The reply denied specifically that deceased had changed his occupation of traveling salesman, or was engaged in any other business at the time of his death, but alleged that in the fall of 1901 the deceased had lost his position as traveling salesman, and that by invitation of his father he had come to temporarily reside on his father's ranch in Texas until he could secure further employment as traveling salesman; that he corresponded with different firms seeking employment, and that at the time of his death he had procured a contract for employment as traveling salesman with a drug company in Chicago, and was preparing to leave for the place of his employment at the time his injury occurred. On issues thus joined there was a trial to the court and jury, verdict for the plaintiff for $5,000 and interest, and judgment on the verdict. To reverse this judgment defendant appeals.

We shall discuss the allegations of error relied upon in the brief of the appellant in the order in which counsel have presented them. The first contention urged is that the court erred in submitting to the jury the question of the deceased's alleged change of occupation, and should have declared as a matter of law that such change had been established by the evidence, and that, consequently, plaintiff's recovery in any event should be limited to $2,000. It is without dispute that at the time the indemnity certificate was issued the deceased was engaged as a traveling salesman for a wholesale medicine and drug company in St. Louis, Missouri, and that he resided in that city with his wife and family; that in the fall of 1901 he lost his position with this firm; that in the preceding

year his father, Dr. Simmons, purchased about 60,000 acres of land in Live Oak county, Texas, and engaged in the cattle business; that the tract of land owned and controlled by the father contained three ranches with ranch houses thereon, one known as the "Beall Ranch" on which the father resided, another known as the "Quartetez Ranch," and another known as the "Big Tank Ranch"; that after the deceased lost his position his father invited him to come and remain with him until he could obtain further employment. In response to this invitation the son came, and at first resided with his father on the Beall ranch. Later the wife and children of the deceased arrived with the household furniture, and moved into the house on the Quartetez ranch, about 15 miles from the father's home. They lived there nearly a year, when they removed to the Big Tank ranch, about five miles nearer to the home ranch. During the time the deceased resided on these different ranches, he was never employed for any purpose by his father, and came and went at his own will, and put in most of his time hunting or visiting from one place to the other. Six of the employees on these premises testified, without contradiction, that the deceased was never either foreman or superintendent of any of these ranches, never employed or discharged any of the hands, nor did anything else connected with the management thereof, except communicate orders or directions from his father to the employees from time to time. When the accident occurred, deceased had started on horseback to one of the ranches for the purpose of gathering up some of his effects preparatory to leaving the place. His father had requested him to stop and examine the windmills at two of his wells and see if they were pumping properly. In compliance with this request, he stopped at one of these places, known as the "Lost Tank" well, at about midday, and the foreman of the ranch, Mr. Franklin, invited him to wait for dinner. He accepted the invitation, and sat down on the ground with Mr. Franklin to eat dinner, when

a large rattlesnake came out of the grass immediately behind him, and, before he could arise, the snake bit him, and as a result of this injury he died on the following day. Doctor Simmons, the father of the deceased, is an attorney at law, as well as a physician and cattleman, and conducted all the correspondence with the defendant on plaintiff's behalf. In the communication which he wrote to the defendant in giving notice of his son's death, in detailing the particulars of the injury and where deceased was when bitten by the snake, he said that the deceased was bitten "while he was sitting quietly at dinner talking with his foreman on my ranch." This statement in the notice is relied upon by the defendant as being conclusive on the plaintiff of the fact that deceased was foreman of the ranch. Doctor Simmons, on the witness stand, stated that the expression "his foreman" was a typographical error of the stenographer· to whom he dictated the letter; that the letter was dictated just after the burial of his son, and that to the best of his recollection he signed the letter without reading it. He pointed out one or·two two other clerical errors in the letter, which, however, are without import. Mr. Franklin, the foreman on the ranch, testified positively that he was never employed by the deceased, never worked under his orders, never made any report to him, never received any directions from him, except in the shape of a message from his father. This testimony is corroborated by that of the other employees on the ranch, and we might add that the whole testimony offered on this question tends to support the theory of Dr. Simmons that the expression "his foreman" in the letter was a clerical error of the stenographer.

The condition of the constitution relied upon is that, "if any member of the association shall, after becoming such, change his occupation to one classed by the executive board as more hazardous than that stated in his original application for membership, he shall be entitled to such benefits only as may be fixed by the executive board

for such increased hazard of his occupation." This clause, being one in the nature of a forfeiture of a portion of the benefits provided for in the membership certificate, will be strictly construed against the association. It will be noted that the condition does not apply to the doing of any particular act connected with some more hazardous occupation, but applies only when the member changes his occupation to one classed as more hazardous, that is, when he engages in a different business or avocation, the nature of which subjects him to additional hazards. It is for the increased hazard of the new occupation in which he engages that the reduction is made. There is nothing in the contract providing for the forfeiture if the member loses his position and is out of employment for any length of time, but the conditions are changed whenever the member abandons his present avocation and enters into an employment more hazardous. It is not the doing of a particular act that might be the incident of a more hazardous calling, but it is the engaging in the calling for a livelihood, for profit or for pleasure, that works the forfeiture. If deceased, while actually engaged as a traveling salesman, had stopped at his father's ranch on a casual visit, and had received the injury in the manner described in the testimony, it could not be contended that the condition in the policy relied upon would have worked a partial forfeiture of his membership benefits, because the riding on horseback to one of the ranches after his effects, and the incidental inspection of the windmills at the request of his father, was only such a mission as might have been performed by one in any walk of life. The length of time deceased had been out of employment did not increase the hazard of his risk, unless, in the meantime, he actually engaged in a more dangerous calling. We think, from an examination of the whole record, that the question of the alleged change of occupation was one for the determination of the jury. *Travelers P. A. Ass'n v. Kelsey*, 46 Ill. App. 371; *Stone's Adm'rs v. United States Casualty Co.*,

34 N. J. Law, 371; *Miller v. Travelers Ins. Co.*, 39 Minn. 548; *North American L. & A. Ins. Co. v. Burroughs*, 69 Pa. St. 43; *Union M. A. Ass'n v. Frohard*, 134 Ill. 228.

The next question urged in the brief is as to the action of the trial court in submitting to the jury the question of plaintiff's compliance with the constitution and by-laws in furnishing final proofs of death; This question was submitted under the doctrine announced by this court in *Woodmen Accident Ass'n v. Pratt*, 62 Neb. 673, and adhered to in *Western T. A. Ass'n v. Holbrook*, 65 Neb. 469, and *Western T. A. Ass'n v. Tomson*, 72 Neb. 674. The instruction complained of told the jury, in substance, that the by-law requiring proof of death to be filed in the office of the association within 30 days from the death of the member is a part of the contract of insurance, but that a strict and literal compliance with such a provision is not in every instance necessary in order to entitle a party to recover, and that, if the jury found from a preponderance of the evidence that the delay in the proof of death was occasioned by circumstances not attributable to the neglect or bad faith of the plaintiff or her attorney, and that the proofs were filed within a reasonable time under all the circumstances surrounding the case, the plaintiff would be excused from not making proof sooner, and would be deemed in law to have complied with the contract of insurance. The principle declared in this instruction is supported by the authorities above cited, so the question to be determined is whether or not the evidence in this case warranted it. The only indorsement on the certificate in the hands of the plaintiff or her attorney with reference to notice of the injury was the following: "No claim under this certificate will be valid unless notice of the injury with respect to which claim is made is received at the office of the association within 15 days of the date of such injury." In conformity with this indorsement, plaintiff did, in less than 15 days, furnish defendant with a notice of the injury and all its surroundings, and in

the letter, written by Dr. Simmons, informed defendant that "Mrs. Hattie V. Simmons, the beneficiary, will make her home with me on my ranch at Oakville, Texas, and you will please forward to me at once, or to her in my care at Oakville, Texas, such papers as you desire to be made out to obtain the death benefit." Again, on the 5th day of July, Dr. Simmons wrote to the defendant, still requesting the proof blanks required to be sent at once to him or to the plaintiff in his care at Oakville, Texas. It is without dispute that no reply was received to either of these letters until the 28th day of July, after the 30 days had expired. It is also in evidence that on receipt of the marked copy of the constitution and by-laws, stating what proof was required, such proof was promptly furnished to the defendant and retained by it. We think, under the showing of diligence contained in the record, the court was fully justified in submitting this question to the jury under the instruction complained of.

The third and last objection is as to the action of the trial court in the admission of evidence. The first assignment under this head is that the court erred in permitting witness Brown to testify that he had seen the contract which deceased had entered into with the Chicago drug firm just before his death. The contract complained of related to the employment of the deceased as a traveling salesman. This testimony, however, was elicited in the first instance by the defendant on the cross-examination of the witness, and on re-examination plaintiff was permitted to show that the witness had seen the contract and letter relative to this employment on the day that deceased was bitten by the snake. The testimony shows that the letter and contract were burned with the clothing of the deceased after his death. Consequently, there is no merit in this contention. The next objection is as to the action of the trial court in admitting in evidence the correspondence between Dr. Simmons and the defendant with reference to the proof of death. These letters were all re-

stricted by instructions to the purpose of showing diligence on the part of the plaintiff in making her final proof. The court, also for the purpose of showing diligence in making final proof, permitted plaintiff, over defendant's · objections, to testify that she had no knowledge that under the by-laws of the association final proof must be made within 30 days of the death, until she received the marked copy of the by-laws from the defendant. This testimony was confined by proper instructions to the mere purpose of showing the good faith and diligence of the plaintiff in making her proof, and for this purpose we think it was properly admissible in evidence.

Finding no reversible error in the record we recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.