## Maysville Tel. Co. v. First Nat. Bk. of Maysville.

### Same v. Matthews. Same v. Mitchell, et al.

(Decided September 27, 1910).

Appeals from Mason Circuit Court.

Telephone Companies—Effort to Adjust Debts—Construction of Contracts—Finding of Chancellor.—This is a controversy between the Maysville Telephone Company against Walter Matthews and others, and E. L. Barber, of Ohio, who proposed to organize the Central Home Telephone Company and buy the Kentucky companies. Evidence considered, and held that under the agreement made, appellants were to get $21,000 for their property in money and $29,000 in stocks and bonds of the new company, and that chancellor properly refused to reform contract.

EDWIN J. MARSHALL and HELM BRUCE for appellant.

WORTHINGTON & COCHRAN and D. L. PENDLETON for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Walter Matthews, Edwin Matthews, S. H. Mitchell and J. W. Chambers organized the Maysville Telephone Company, and owned all the stock except three shares which were held by another for Chambers. The capital of the company was fixed at $5,000, but they had extended their lines and improved their plant from time to time until they had spent nearly $50,000, and had a debt of

$21,000 against the company for which they were personally responsible. In this condition of affairs, E. L. Barber, of Ohio, who had conceived the idea of organizing the Central Home Telephone Company and taking over a number of telephone plants in Kentucky so as to make a system, proposed to buy their property. They told him that they owed $21,000 for which they were personally bound, and this must be paid. He told them that he wished to put the property in the new company free of debt. They gave him an option on their property on November 18, 1905, by which, if accepted, they were to turn over to him the entire number of shares of the capital stock for the sum of $50,000 in capital stock and $50,000 in 5 per cent. bonds of the new company, and in consideration of the fact that there were outstanding debts against the Maysville Telephone Company to the amount of $21,000, for which they were personally liable, Barber agreed to execute an agreement to the effect that he would purchase $21,000 of the stock and $21,000 of the bonds for the sum of $21,000 for the two together. Barber finally accepted the option and a written contract was drawn by Barber's attorney, and after it was drawn was carefully read by the parties before it was signed. This written contract after setting out the facts above stated contained these words:

"The said stock and bonds which are by said accepted option to be delivered to the above mentioned four parties, being the stock and bonds of the Central Home Telephone Company, will be delivered to said parties as soon as they can be gotten ready for delivery, they being now in course of mechanical preparation. It is further understood and agreed that to the extent that the said parties shall receive from said Barber cash on account of said stock and bonds sold to him, they will assume the primary obligation upon any indebtedness of the said Maysville Telephone Company or Maysville and Vanceburg Telephone Company, and will hold said company harmless against the same."

Barber took possession of the property and organized his new company; but he did not pay the $21,000 although called upon so to do. The new company failed and Barber failed. The actions were brought to enforce against the Maysville Telephone Company the debts above referred to. The company answered pleading in effect that Matthews and his associates had assumed these debts in the contract above referred to and that by

a mistake of the parties the contract was not drawn as it was agreed to be. A reformation of the contract was prayed. An issue was formed and on final trial, the circuit court refused to reform the contract and entered a judgment in favor of the creditors of the company against it. From this judgment the appeal before us is prosecuted.

It will be observed that by the writing Matthews and associates only agreed to pay the debts and hold the company harmless to the extent that they received from Barber the cash on account of the stock and bonds sold to him. As they in fact received nothing from Barber, under the language of the contract they were not bound to pay the debts and hold the company harmless against them. It is earnestly insisted that the writing does not conform to the real contract; but it was drawn by a very skillful lawyer several months after the option had been given. He was Barber's regular attorney, and both parties explained the contract to him fully. He then wrote it out, gave each of them a copy of it, and they both, after examining their copy, said it was all right and signed it. Aside from this, the purpose that Matthews and his associates had in selling the stock was to secure the payment of the debts on which they were personally liable for $21,000. It was never contemplated by them that they would give up the property they had and leave this personal liability unprovided for. To sustain appellants' contention now would be to require them to pay the debts amounting to $21,000 with no security except the stocks and bonds of the new company which has since failed. Their construction of the contract does not mean that they were to get $50,000 plus $21,000 for their property. They were to get $21,000 for their property in money and $29,000 in stocks and bonds of the new company. The chancellor with all the facts before him, sustained them. We give great weight to the finding of the chancellor, and we do not disturb his finding on a question of fact like this, where on all the evidence the mind is left in doubt. Taking all the circumstances into consideration, we conclude that the weight of the evidence sustains the chancellor's conclusion, and that he properly refused to reform the contract.

Judgment affirmed.