## Maysville Telephone Co. v. First National Bank of Maysville, Ky.
## Maysville Telephone Co. v. Matthews.
## Maysville Telephone Co. v. Mitchell, et al.

(Decided March 3, 1911.)

### Appeals from Mason Circuit Court.

1. Telephones—Contract—Sale of Plant.—The owners of the Maysville Telephone plant made a written contract with B to sell him the plant for $50,000 in the stocks and bonds of the new company which he proposed to organize. There was a debt of $21,000 against the telephone company. This debt was to be settled so that the new company would take the property free of debt; and to this end B agreed to furnish the $21,000 to the owners with which they were to pay the debts and turn over to him $21,000 of the stocks and bonds of the new company. The new company was organized and took over the property, but did not furnish the $21,000. Held that when the telephone company pays the debts it will be entitled to the $21,000 of stocks and bonds which were to be delivered to B.

2. Principal and Surety.—Where the sureties give a new note of their own, and take up the note of their principal, they may maintain an action against the principal for the money, although they have not paid their own note, and this they may do although the old note was attached to the new note as collateral.

3. Directors—Payment of Debts.—The directors of the company having paid off some of the debts in anticipation of B's complying with his agreement, may recover from the telephone company for the amount so paid on its debts.

E. J. MARSHALL and BRUCE & BULLITT for appellants.

WORTHINGTON & COCHRAN and D. L. PENDLETON for appellees.

EXTENDED OPINION OF THE COURT BY CHIEF JUSTICE HOBSON.

In the petition for rehearing several matters are insisted on which are not noticed in the opinion. (See Maysville Telephone Co. v. First National Bank, 140 Ky., 51.)

1. It is insisted that if the Telephone Company pays the debts amounting to $21,000, appellees should be required to deliver to it, the $21,000 of stocks and bonds, which they were to deliver to Barber when he furnished $21,000 for the payment of the debts. This matter was not presented to the circuit court in any pleading or otherwise so far as the record shows; it was not suggested to us on the original hearing and we do not think the judgment of the circuit court should be reversed at the cost of appellees for a matter not presented to it, or passed on by it. The matter will not be concluded by the judgment in these actions and may hereafter be presented to the circuit court by an appropriate proceeding. The sum of the agreement between Barber and Matthews was that the new company should take over the property free of debt; that Barber would furnish $21,000 for the payment of the debts; and that Matthews, etc., should get for their property $29,000 of stocks and bonds of the new company after the debts were paid. The Telephone Company has no right to demand the $21,000 of stocks and bonds until it pays the debts. When it furnishes the $21,000 its right of action to demand the stocks and bonds will accrue. So far as we see from the record before us, Matthews, etc., should not retain the $21,000 of stocks and bonds after the debts are paid, but should turn them over to the Telephone Company upon its paying the debts; for in this way they will get what they bargained for, and the new company will get what it bargained for; but this question is not finally determined now, as we do not know what facts may be pleaded or shown when the

matter is properly presented. We only determine the matter on the facts now shown, that there may be no further controversy about the matter on these facts.

2. It is insisted that the court erred in giving judgment on three claims, set up against the Telephone Company.

The State National Bank of Maysville held a note for $5,000 on the Telephone Company on which Matthews and his associates were sureties. On January 10, 1908, the sureties executed a new note to the bank which· the bank accepted, the Telephone Company not being a party to the new note. The debt and interest then amounted to $5,278.75, and for this they asked judgment although they had not paid the note which they executed to the bank, but had only paid the interest on it. The note which the sureties executed to the bank was due in 90 days, and when the bank accepted this note it lost its cause of action upon the old note, and had no cause of action against any one until the new note matured. It has been held that the surety who executed his individual note for the debt in this way, may maintain an action against his principal as for money paid. (Robertson v. Maxcey, 6 Dana, 105; Smith v. Young, 11 Bush, 395.) But it is insisted that the rule does not apply here for the reason that Matthews, etc., when they gave the new note to the bank attached to it the old note as collateral security; but this is not material. The new note operated as a payment of the debt. Matthews, et al., then had a cause of action against the Telephone Company for the money they had paid, and this cause of action was all that was assigned to the bank as collateral security for their note. The bank had no right of action of any kind until the maturity of the new note, and its only right then against the Telephone Company was upon the cause of action of the sureties for contribution. It is true that the State National Bank should have been made a party to the litigation in the circuit court. But that it was not made a party was simply a defect of parties which was waived by the Telephone Company when it did not make the objection. (Vanbuskirk v. Levy, 3 Met., 133; 30 Cys., 51.) If Matthews, et al., are insolvent or any equitable reason exists for apprehending loss by the Telephone Company, if the money is paid to them, it may yet by proper action, obtain an order directing the money to be paid to the bank to the extent of its debt.

After January 1, 1906, Matthews and his associates managed the Telephone Company until July 1, 1906, for Barber, under an agreement that the new company should be entitled to the earnings from January 1st to July 1st, at which time Barber had perfected his arrangements and by his agent took charge. Matthews and his associates then settled with Barber's agent and paid him the balance found in their hands, charging them with the earnings since January 1st, and crediting them with the operating expenses. They had in the meantime used a part of the money they had received in paying the debts of the company in existence at the time of Barber's purchase, but no part of the money paid on these debts was credited to them. The debts of the company which were created before but were paid by them after January 1st amounted to $1,974.87, and for this they were given judgment against the Telephone Company. It is clear from the record that Matthews, et al., turned over all the net earnings of the company after January 1st upon the idea that Barber would pay them the $21,000, and with this they would pay the debts. Barber had not complied with his agreement on July 1st, and so they were going along expecting him to comply with it. The debts of the company were just claims, and having been paid by them they should be reimbursed.

Among other notes due by the Telephone Company was one to the Bank of Maysville on which there was $530.80 of interest due. Walter Matthews borrowed this sum from the first Nationad Bank and paid it. It is said the Telephone Company did not request the payment of this interest, but this was interest on its debts, paid to obtain time from the bank, and the sureties should be reimbursed.

The opinion is extended as above indicated. The petition for rehearing is overruled.