## Jefferson's Administrator v. Bogard's Administrators, et al.

(Decided June 3, 1914.)

### Appeal from Trigg Circuit Court.

Contribution—Action for Sureties Against Co-sureties for—Evidence.—In an action for contribution by sureties, following their payment of their principal's defalcation, against their co-surety the evidence fails to support the defense that by agreement another was to be bound as surety in his stead and that he was to be held harmless.

SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellant. .

SMITH & RYAN for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In 1896 M. M. Hanberry was appointed master commissioner of the Trigg Circuit Court; about the time of his appointment negotiations between him and certain friends looking to the execution of his bond were pending; W. A. Bogard and Z. T. Bogard were willing to be obligated on his bond to the extent of two-thirds of the liability, and W. C. White was willing to assume one-third, but for personal reasons the latter was unwilling that his liability should be made a matter of record.

Under these circumstances he executed to Messrs. Bogard the following writing, to-wit:

"KNOW ALL BY THESE PRESENTS: THAT WHEREAS, M. M. Hanberry has been appointed master Commissioner of the Trigg Circuit Court by Hon. James Breathitt, and whereas it is necessary that said Hanberry shall execute a bond approved by the Court, and desiring that no trouble shall arise in the execution of said bond and being willing to share with his bondsmen, W. A. Bogard and Z. T. Bogard, any liability they will assume as bondsmen for said Hanberry as Commissioner aforesaid and they signing said bond on the faith of this obligation, I, W. C. White hereby bind and obli-

gate myself, my representatives and heirs unto the said W. A. Bogard and Z. T. Bogard that I will make unto them in current funds, one-third of any and all money and monies that they may sustain loss of by reason of their suretyship on said Hanberry's official bond as Master Commissioner aforesaid. It is expressly understood that I, W. C. White, do hereby assume and obligate myself that, in consideration of the risk W. A. Bogard and Z. T. Bogard assume as sureties on said Hanberry's bond as Commissioner aforesaid, that I hereby bind myself unto said W. A. Bogard and Z. T. Bogard, to bear one-third of the liability, the said Bogards have or may assume as sureties aforesaid, and in event said W. A. Bogard and Z. T. Bogard suffer any loss by reason of any defalcation or neglect on the part of said Hanberry Master Commissioner aforesaid that I. the said W. C. White, will make good and pay over to them one-third of any such loss they may sustain, if any loss there be. I hereby waive all technicalities or omissions intended to be embraced herein.

"In witness whereof I hereunto set my hand this 20th February, 1896.

"W. C. WHITE."

In the negotiation between White and the Bogards it does not seem to have been contemplated that any other person would sign the bond as surety. However, when the bond was executed it was signed, not only by the Bogards, but by John G. Jefferson, who was the law partner of Hanberry, and who was to be interested to the extent of one-half in the fees of the office.

Thereafter Hanberry defaulted as Master Commissioner, and suit was instituted on his official bond which resulted in a judgment against him and his bondsmen, which upon appeal to this Court was affirmed, and which, when finally paid by the Bogards, amounted to $1,404.55.

Hanberry being insolvent, White in compliance with his obligation to the Bogards paid them $468.18, leaving the sum of $936.36 paid out by the Bogards, over and above their indemnity from White, by reason of their liability on the bond.

This is a suit by the Bogards against Jefferson seeking contribution from him as co-surety on the bond to the extent of one-third of the last named sum.

The defendant answered, alleging that at the time of the agreement between the Bogards and White it was agreed that he (Jefferson) was to do all the clerical work in the office for Hanberry as Master Commissioner, and was to countersign all checks to be paid out which were to be drawn by said Master Commissioner, and that the cashier of the bank where the funds were to be deposited was directed not to honor any check until countersigned by Jefferson; and that in consideration of these services it was agreed between the Bogards and White and Jefferson that he (Jefferson) was to be held harmless as surety on said bond, and that White was to assume and did assume the one-third of the liability that the defendant Jefferson was supposed to assume, and that he (Jefferson) signed said bond with this understanding and agreement, and that White executed the written contract to the Bogards upon these conditions.

These allegations were duly denied by a reply.

The court entered a judgment against Jefferson for one-third of the amount paid by the Bogards after deducting the indemnity paid them by White, and Jefferson's administrator appeals.

The depositions of White and Hanberry show, being the only evidence taken on that issue, that at the time of the agreement between White and the Bogards it was not understood or contemplated by any of the parties that Jefferson had or would become bound on the bond, and yet the indisputable fact is that he signed the bond jointly with the Bogards; and as the writing between White and the Bogards shows on its face that White was to indemnify the Bogards only to the extent of one-third of any sum for which they might become liable as sureties on the bond, there is no reason why they may not receive contribution from Jefferson in addition to that received from White.

The allegation in the answer that there was an agreement by which White was to assume the liability of Jefferson on the bond, and that Jefferson was to be held harmless, is totally unsupported by the evidence. It is apparent from the writing itself that Jefferson was not considered in the arrangement between White and the Bogards.

If White did not know when he executed the paper to the Bogards that Jefferson had signed or contem-

plated signing the bond it is difficult to see how the signing of that paper could have been intended to protect Jefferson.

It is further insisted for appellant that two items embraced in the aggregate of $1,404.55, and which two items aggregated $218.90, being costs in the circuit court and attorneys' fees, were not covered by the terms of the bond, and that plaintiffs were therefore not en titled to contribution therefor; but it is sufficient to say in response to this that there was no issue made in the pleadings as to these items or either of them, although it appears in the face of the petition that they each went to make up the aggregate of $1,404.55. The only defense presented by the answer was that by agreement between the parties White was to be bound as surety in Jefferson's place and Jefferson was to be held harmless, and the evidence fails to support this allegation.

The judgment is affirmed.