# Hartford Accident & Indemnity Company v. Davis, et al.

# United States Fidelity & Guaranty Company v. Davis, et al.

(Decided April 18, 1919.)

## Appeals from McCracken Circuit Court.

1. Insurance—Actions on Policies—Disability.—Insured was injured in May and died the following November. That between these dates he made efforts to perform some of the duties of his office, in the soliciting of insurance, was not such a substantial performance of duties incident to his business as would defeat recovery under a policy of insurance, providing, that payment of the policy will not be made unless the insured shall have been continuously and totally disabled and prevented from performing any and every kind of duty pertaining to his occupation from the date of injury to the date of death

2. Insurance—Disability—Recovery.—Where as a result of injury insured is unable to do or perform all the substantial work necessary to be done in connection with his business a recovery may be had.

3. Insurance—Question for Jury.—Whether or not the death of insured was due to disease was a question for the jury, the evidence on this subject being conflicting.

MOCQUOT & BERRY for appellants.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

These suits were instituted by appellee, Marjorie C. Davis, wife of Frank F. Davis, against the Hartford Accident & Indemnity Company on one policy and against the United States Fidelity & Guaranty Company on two policies, seeking recovery of the face of said policies as well as certain weekly indemnities on each of them.

The plaintiff alleged that her husband, the insured, died as the result of an accident on May 22, 1916, when he slipped and fell on the step of a building, injuring his spine, and another accident occurring three days later when he injured his spine while attempting to get out of a bath tub at his residence. Liability was denied by the companies because of breach of certain warranties and misrepresentations on the part of the insured; that

the alleged injuries did not wholly and continuously disable or prevent the insured from attending to his business; that he died as the result of disease which was not brought about by any injury or accidental means, and under the terms and conditions of the policies plaintiff was not entitled to the face of the policies, nor any part thereof, nor to any indemnity whatsoever.

The cases were submitted to a jury and from verdicts adverse to appellants they have appealed.

Insured conducted a general insurance business in Paducah, and among the companies represented by him were the two appellants. All three policies were in force at the time of his death, November 21, 1916. The policies contain substantially the same provisions. Those pertinent to this appeal are:

"Sec. 1. If any loss specified in this section shall result directly and exclusively from such injury, and the insured shall have been continuously and totally disabled and prevented from performing any and every kind of duty pertaining to his occupation, from the date of such injury to the date of such loss; or if, irrespective of total disability, such loss shall result directly and exclusively from such injury within three months after the date of the accident, the company will pay for LOSS OF LIFE The Principal Sum.

"Sec. 2.    (a)   If such injury shall immediately, continuously, and totally disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay, as long as the insured lives and suffers such total disability, the weekly indemnity above specified."

The provisions are taken from the Hartford policy.

Much medical testimony was introduced.

For appellee, his widow testifies to the bath tub accident; she heard the noise of the fall; insured complained of soreness at the end of his spine; she rubbed him with some medicine she had at home. He never was well after this; he made efforts to get out, but was never able to attend to his business like it should have been done. After the date of the accident, if he went to his office he would be all to pieces when he came home. Most of the time she would take him in the auto to deliver policies. She never saw any external evidence of his injury; there was no change for the better in his condition from the time of the accident until his death.

Prior to the accident he was always well, an athelete, fond of games. About the middle of July he went to Chicago to consult some specialists; he took a brief trip to Cerulean Springs and to South Haven, but grew worse all the time. Corroboration of different parts of her testimony is found in the evidence of five other witnesses.

Dr. Sights made a special study of the diseases of the brain and the nervous system; saw insured October first and practically every day until his death; found a bruised spot on the end of the spine; considered the fall on the iron steps (first accident) the primary cause of death, producing the condition that resulted in his death. This was his conclusion after close analysis of the history of the case and about 53 days' treatment.

Dr. Hearne, in answer to a hypothetical question, says the injury was the cause of death; was present when insured died; he died from convulsions. From his diagnosis it was a cerebral lesion or brain lesion.

For appellants, the bookkeeper in his office testified that the first she heard of the accident was about the middle of July; thinks she saw insured every day; saw no difference in the time he spent at the office; he wrote new business of all kinds and did some collecting until July. She works for the present agent of these companies.

Buford Rhodes purchased the agency after insured's death; he was associated with him in the office previous to his death; he corroborates the bookkeeper and states that he furnished appellants with a list of policies written by insured between May and November.

About fifteen witnesses testify that insured solicited them, or they called him, for policies, between June and November. Most of those instances occurred in June, and were taken under varying circumstances and in different portions of the city.

Eight physicians, osteopaths, allopaths and surgeons testify. In the opinion of most of them death was not due to the accident—insured had a disease of the spine, which had existed probably several months.

Several exhibits are filed with the record such as proof of claim, application for disability clause on certain of insured's policies, certificates of death, etc. When asked in rebuttal why he stated in the certificate of death that the contributory cause of insured's death was un-

known, Dr. Sights explains that he analyzed the case after insured's death.

Insured died more than ninety days after the two accidents, at the age of thirty-two years. His average weekly income was seventy-five dollars.

In two particular instances we have had before us policies containing provisions similar to those sued on.

O'Brien's Extx. v. Natl. Life and Acci. Ins. Co., 155 Ky. 498. The insured in that case was injured in a runaway accident. It was claimed his death was due to Bright's disease, and that the accident did not wholly and continuously disable him from performing every and any duty pertaining to his business. The court classifies the authorities construing the disability clause, and adopts the one holding that a total disability exists if the insured's injuries are of such a character that common prudence requires him to desist from his labors and rest, so long as it is reasonably necessary to effect a speedy cure.

The widow, O'Brien, testified that "after he was several weeks' sick he got up, but he wasn't up very long. It might have been a week or little more and he was taken sick again and he wasn't well from that time on then. He would get up and go out and come back to bed again and sometimes maybe he would set up an hour or so."

It is held in this case that the disability would be total if of such a character as to prevent the insured from transacting *any* kind of business pertaining to his occupation. That it is sufficient if the disability was such as to prevent insured from doing all the substantial acts required of him in his business.

Doyle v. New Jersey Fidelity & Plate Glass Ins. Co., 168 Ky. 789. Here the insured, a dentist, injured his finger June 21, 1912, and blood poisoning later developed. The provision of the Doyle policy and the policies in this case are almost identical. A recovery was denied because from August 7 until November 4 (when he died) Doyle was at his office regularly and performed at times substantially all of his accustomed duties. After quoting from the O'Brien case, *supra,* the court says:

. "From the above quotations from the O'Brien case it will be seen that this court is committed to a 'reasonable construction' of the clause in question 'that is as just to the assured as to the insurer,' and that that end

is attained 'if the disability of the insured is such as to prevent him from doing all the substantial acts required of him in his business.' And while it is difficult to state a general rule of construction that will be applicable to all cases, we think we may safely state as an elaboration of our views upon this subject that a recovery should not be denied under such a clause as we have before us when the evidence shows that the insured was able to be up and about, and to do minor and trivial things not requiring his time or attention, or to direct his business and do some of the work himself, if his injuries are such that common prudence demands he desist from his labors and rest, so long as it is reasonably necessary to effect a speedy cure, and he is unable to do the things which constitute substantially all of his occupation, or wholly disabled from doing all the substantial and material acts necessary to be done.''

Continental Casualty Co. v. Matthes, 150 Ky. 477, is to the same effect; here a recovery was sustained though the insured undertook to do some of his work.

The court quotes with approval from Hohn v. Interstate Casualty Co., 115 Mich. 79, wherein it was held that a barber who went to his shop several days after the accident, suffering pain the while, and then was obliged to take to his bed on the eighth day, was immediately, continuously and wholly disabled.

Preferred Acci. Ins. Co. v. Gray, 123 Ala. 482, 26 Sou. 517, in which a recovery under the policy was sustained, is much in point. The assured, a physician, was injured, and as a result thereof the evidence showed he was unable to continue the practice of his profession for a period of three months, and lost weight from 220 to 147 pounds, and was obliged to go away to recuperate; on the other hand it was shown by evidence that he had been seen on the street during the three months in question, and the insurance company introduced in evidence some fifty prescriptions shown to have been written by the assured during the time he was alleged to have been ''wholly and continuously disabled from transacting any and every kind of business pertaining to his occupation.''

See also Monahan v. Supreme Lodge of the Order of Columbian Knights, 88 Min. 224, 92 N. W. 972; Baldwin v. Fraternal Acci. Assn., 21 Misc. Rep. 124, 46 N. Y. Sup. 1016, affirmed in 159 N. Y. 561, 54 N. E. 1089; U. S. Cas. Co. v. Hanson, 20 Colo. App. 393, 79 Pac. 176.

In Fuller on Accident and Employers' Liability Insurance the author, on page 296, thus states the rule:

"The courts are a unit in declaring that this clause must be given a practical and rational construction. It is not often that a man is so completely disabled as to prevent his engaging in any kind of occupation. However, to hold the insurance company liable on its policy, it is not sufficient that the disability impairs the effectiveness and earning power of the assured in a general and superficial way. Nor is it sufficient that the injury resulting from the accident renders him unable to perform all the duties of his profession or occupation. He must be unable to perform them with substantial and reasonable effectiveness in order to recover on his policy. To entitle the assured to indemnity, it is not essential that his injury should disable him to such an extent that he lacks the physical ability to do anything in the prosecution of his business. It is sufficient, according to the undoubted weight of authority, even under the clause providing for indemnity for injuries which shall "wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured,' that his injury be of such a character and so severe that he is unable to do all the substantial acts necessary to be done in the prosecution of his business."

And again, on page 305: "And it is also a question for the jury to determine whether an assured party is 'totaly disabled' in all cases where from the evidence there might be an honest difference of opinion among fair-minded men."

If, as the result of all of insured's efforts, he was able to write only fourteen or fifteen policies between the date of his injury and his death, and part of this with the assistance of his wife, we are not prepared to say he was able to perform substantially all the duties of his business. Had he performed other services or secured other business doubtless defendant would have proven it, as they had the books. He certainly did not do near the amount of work done by Dr. Doyle, as will be found from reading the opinion in said case.

In submitting the case to the jury the court appears to have had in mind the law as stated in the cases herein referred to, and we find no error in the instructions

given, and since those instructions embraced the whole law of the case the court did not err in refusing to give the instructions tendered by appellants. There was sufficient evidence to take the case to the jury. Its decision favored appellee, and while the evidence would seem to preponderate in favor of appellants this will not justify or authorize us to set the verdict aside or order a new trial because we cannot say it is flagrantly against the evidence. Both as to the extent of the disability and whether insured died of disease or from accident, the two points urged by counsel, the evidence is conflicting—hence a question for the jury.

The judgment in each case is affirmed.