## Fish, et al. v. Fish, et al.

(Decided June 13, 1919.)

## Appeal from Rockcastle Circuit Court.

1. Life Estates—Adverse Possession—Remaindermen.—The possession of a life estate is not adverse to the remaindermen.

2. Husband and Wife—Antenuptial Contract—Property Included—Finding of Chancellor—Evidence.—In an action by a widow to enforce an antenuptial contract, providing that in the event of issue she should be endowed with one-third of the home place of her husband, evidence examined and held to sustain the chancellor's finding that a tract of land adjoining the home place was

not a part thereof but belonged to his first wife, and upon her death descended to her children.

3. Husband and Wife—Antenuptial Contract—Fraud—Evidence.— Evidence held to sustain the finding of the chancellor that an antenuptial contract, whereby a wife was endowed with one-third of the home place owned by her husband, and was given a child's part in the remainder of his property in the event she had issue, but if she had no issue, she was given a child's part in all of his property, was not obtained by fraud.

4. Husband and Wife—Antenuptial Contract—Construction.—An antenuptial contract providing that in the event of issue the wife "shall be endowed with one-third of the home place of the father and husband, and that all of the other property belonging to the husband at the time of his death shall be sold and the wife, instead of dower in said property, shall take a child's part," construed and held that the word "endowed" was used in its technical sense, and that the wife took only an estate for life in one-third of the home farm.

5. Descent and Distribution—Advancements.—Where the father has a large amount of property, small gifts of money made to his children, without any view to a settlement in life, should not be charged as advancements.

6. Appeal and Error—Questions Not Raised Below—Practice.—It is not the practice of the Court of Appeals to pass on questions not raised or adjudicated below.

J. B. ADAMSON and BETHURUM & LEWIS for appellants.

C. C. WILLIAMS, J. W. BROWN and HOBSON & HOBSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a contest over the division of the estate of A. T. Fish, who died intestate and a resident of Rockcastle county, in the year 1913. The contest is between his second wife and widow, Volicy Fish, and their daughter, Samantha Adams, on the one hand, and the issue of his first marriage on the other hand.

By his first wife, Samantha Fish, A. T. Fish had several children. On June 18, 1890, when he was sixty-four years of age, he married Volicy Menifee, who was then twenty-two years of age, and one daughter, Samantha Adams, was born of this marriage. On the day prior to the marriage he and Volicy Menifee entered into the following antenuptial contract:

"Know all men by these presents, that we, the undersigned, A. T. Fish and Volicy Menifee, have this day en-

tered into a marriage contract, by the terms of which it is agreed that in the event there be an heir, or heirs, born to us, and in the event that the same be living at the death of the father, A. T. Fish, and the mother also be living, then the mother shall be endowed with one-third of the home place of the father and husband. And all other property belonging to the husband at the time of his death shall be sold, and the wife, instead of dower in said property, shall take a child's part. But in the event of the husband's death without heir or heirs by the said Volicy, his wife, then she is to take of all of his property owned by him at the time of his death, in lieu of dower, a child's part of said property.''

Claiming that A. T. Fish was the owner of a tract of land consisting of 209 acres at the time of his death, Volicy Smith and her daughter, Samantha Adams, asserted an interest therein, as well as in certain personal property left by the deceased. Their claim to an interest in the entire tract of land was resisted by his issue of the first marriage on the ground that 109 acres thereof belonged to his first wife. Thereupon, Volicy Fish insisted that if this was true, the antenuptial agreement was obtained by fraud. The further claim was made that even if the antenuptial agreement was valid, it gave her an absolute interest in one-third of the home place and not merely a life interest therein. She further sought to have the descendants of the first marriage of A. T. Fish charged with certain advancements.

On final hearing the chancellor upheld the antenuptial agreement and further held that the 109 acres of land in contest were conveyed to the first wife of A. T. Fish by her father, and belonged to her children and grandchildren, and that neither Volicy Fish nor her daughter was entitled to any interest therein. It was further adjudged that Volicy Fish was entitled to a life interest in 31½ acres, that being one-third of the adjoining tract, and the claim that the issue of the first marriage should be charged with certain advancements was rejected. From that judgment this appeal is prosecuted.

(1) The evidence fully supports the chancellor's finding that the 109 acres of land belonged to Samantha Fish, the first wife of the deceased, and the claim of title by adverse possession on the part of A. T. Fish, cannot, of course, be sustained. On the death of the first wife,

A. T. Fish, as tenant by the curtesy, was entitled to a life interest in her land, and being a life tenant, his possession of the land was not adverse to the remaindermen. Carpenter v. Moorelock, 151 Ky. 506, 152 S. W. 575.

(2)   But it is insisted that the antenuptial agreement should be set aside because Volicy Fish claims that A. T. Fish was guilty of fraud in representing to her that the 109 acres belonging to his first wife was a part of the home place.   Taking into consideration the ages of the parties and the fact that A. T. Fish owed certain obligations to his children by his first wife, it cannot be said that the provision which he made for Volicy Fish was, under all the circumstances, inequitable or unjust.   So it remains to determine whether the evidence is sufficient to show that he represented the home place as being larger than it actually was.   The testimony of Mrs. Fish on this question is as follows: A. T. Fish said the farm was his —belonged to him; that he owned that 200 acres of land; that it was the land he lived on; before they were married he claimed he owned 200 acres.

She further stated that she and Mr. Fish rode around the place and he showed her where the lines were and claimed all the time that he had about 200 acres.   As a matter of fact, he did have more than 200 acres of land aside from that belonging to his first wife.   The excess over the land owned by him at the time of his death was conveyed by him by deeds in which Volicy Fish united. These tracts aggregated at least 150 acres, and Mrs. Fish admits that these tracts of land came off the boundary that Mr. Fish showed her when they rode around it. Taking into consideration these circumstances, it is clear that A. T. Fish did have 200 acres of land at the time of the alleged conversation, and it is by no means clear that he represented to her that the land owned by his first wife was a part of the home place.   We therefore agree with the chancellor that the evidence of fraud was not sufficient to authorize an annulment of the antenuptial agreement.

(3)   Another contention of Mrs. Fish is that the chancellor erred in not adjudging her an absolute estate in one-third of the home place instead of a life estate. It may be conceded that the word "endowed" is not always used in the technical sense, of "dower," but frequently has a more comprehensive meaning.   After all,

however, its meaning is a matter of construction and depends on the object in view and the connection in which it is used. It is clear from the contract in question that A. T. Fish desired to make a suitable provision for his prospective wife, and at the same time be just to his children by his first wife. The purpose of the contract was to limit her dower and distributable share, and not to enlarge her rights. To this end she was "endowed" with one-third of the home farm and not with one-third of all his lands. In view of these considerations, we conclude that the word "endowed," as employed in the contract, was used in its technical sense and should not be construed as vesting an absolute estate.

(4) The chancellor did not err in refusing to charge the children of A. T. Fish by his first wife with certain sums as advancements. Considering the large amount of property that A. T. Fish had and the size of the sums paid to his children, it is evident that the gifts were such as any father might ordinarily make to his children, without any view to a settlement in life.

(5) Another error relied on was the failure of the court to require Julia Proctor to pay into court the sum of $600.00, the unpaid consideration for a tract of land conveyed to her by A. T. Fish. It does not appear that this question was ever raised by any pleading in the case, or was ever passed on by the chancellor. Since this court is a court of review and not of original jurisdiction, it is not our practice to pass on questions not raised or adjudicated below.

Judgment affirmed.