## Benefit Association of Railway Employees v. Secrest.

(Decided June 2, 1931.)

HUGH RIDDELL and PAUL E. KELLER for appellant.

HAFFORD E. HAY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal brings to us for review a trial in the circuit court of an action by William Arthur Secrest, the appellee here, against the Benefit Association of Railway Employees, the appellant, on an "Accident and Illness Income Policy" issued by the appellant to the appellee on the 17th day of July, 1928. On a trial by jury, a verdict was returned for the appellee for the sum of $2,075, on which a judgment was rendered, from which this appeal is prosecuted. For his cause of action, the appellee in his petition sets up the entering into and the making of the contract of insurance between him and the appellant, its terms and conditions. He alleged that on the 29th day of September, 1928, while the contract was in force, he was accidently hurt by a garage door slamming against his shoulder, striking him across the muscles, knocking his shoulder bone loose, cutting the muscles, and that his shoulder is three inches lower than normal, resulting in a paralysis of his arm.

At the time the policy was issued, the occupation of appellee was that of clerk or chief engine dispatcher for the Louisville & Nashville Railroad Company at Ravenna, Ky., and it is so given in the policy. In consideration of the payment of a monthly premium of $4.50, among other provisions for accidental injuries, the appellant agreed to pay $100 per month (1) "for loss resulting directly and exclusively of all other causes, from bodily injury sustained at any time during the life of this policy solely through external, violent and accidental means (excluding suicide, sane or insane), such bodily injury so sustained being hereafter referred to as 'such injury. . . . ' "

Part 4, section A, under the title "Monthly Accident Indemnity" of the policy, is in this language:

"(a) When 'such injury' shall, independently of any and all other causes, immediately, totally and

continuously disable the insured from and after the time 'such injury' was received and prevent the insured from performing any and every kind of work pertaining to his occupation, the Association will pay for actual loss of time from the first day of such disability for the continuous period of such total disability, accident indemnity at the Rate per month specified in Part I.''

Section B reads:

''(b) Or if 'such injury' shall not from date of the accident wholly disable the Insured but shall within one hundred days thereafter wholly disable him, or shall, commencing on date of the accident or immediately following total loss of time, prevent him from performing work substantially essential to the duties of his occupation, the Association will pay as indemnity for the continuous period of loss of the time caused thereby, not exceeding twelve consecutive months, one-half of said monthly indemnity.

''Provided, that indemnity under this Part shall not be paid for disability resulting from any loss specified in Part II, except such indemnity as may be payable during the intervening period as therein specified; nor for any loss specified in Part VII hereof; nor unless the Insured is continuously, by reason of 'such injury' necessarily under the regular treatment at least semimonthly, of a legally qualified physician or surgeon, and only while he remains within the boundaries of the United States of America or Canada.''

Clause 1 of the standard provisions of the policy provides that, if he is injured after having changed his occupation to one classified by the appellant as more hazardous than that stated in the policy, or while he is engaged in doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in such event the appellant agreed to pay such indemnity provided for in the policy as the premium would have purchased at the rate fixed by it for such more hazardous occupation.

To prevent a recovery, the appellant traversed the petition, and affirmatively pleaded that before the injury to the appellee occurred he left the services of the rail-

road company, and became actively engaged in selling insurance, that he left the services of the railroad company for the purpose of following another occupation, and that his injury did not prevent him from carrying on the work of selling insurance.

By amended answer, it relied on his failure to give notice to the appellant within twenty days after his injury. By a second amended answer, it averred that "appellee was not a clerk of the L. & N. Railroad Company but was engaged in another occupation and that his injury did not prevent him from carrying on the work of the occupation in which he was engaged at the time of his injury." By agreement, the affirmative allegations of the pleadings were traversed of record.

The appellant for reversal urges (1) that the phrase "the occupation of the insured" means his occupation at the time of the injury, and not the occupation he was engaged in at the time the policy was issued; that he had changed his occupation before the injury from engine dispatcher to insurance solicitor; (2) he worked as an insurance solicitor following and subsequent to his injuries, and that his disability is not compensatory because such disability was not immediate and continuous from the date of the accident; (3) he failed to prove he was under the care and treatment of a regularly qualified physician or surgeon during the entire period of disability; (4) the court should have allowed appellant credit for accrued premiums.

There is no express clause or provision in the policy forbidding the appellant from engaging at the same time in an occupation other than clerk or engine dispatcher of a railroad company, nor is there a clause in it providing for a forfeiture if he should change his occupation or engage in two occupations. On the 6th day of September he became ill with flu and continued ill until September 28th. In the meantime he asked for and was granted a leave of absence by the railroad company in this language:

"All Clerks: On account of temporary physical disability Mr. W. A. Secrest, Engine Dispatcher at Ravenna is granted a sixty (60) days leave of absence and given the privilege of engaging in such work as he may find and his health permits."

On December 13, 1928, he was granted a second leave of absence in this language:

"All Clerks: On account of continued illness Engine Dispatcher, W. A. Secrest has been extended an indefinite sick leave and his position bulletined accordingly."

His injury occurred on the 28th day of September, 1928.

Before his first leave of absence was granted, and while regularly engaged in his employment as "Chief Engine Dispatcher for the L. & N. R. R. Company and as clerk," the appellee had been engaged on the side in writing insurance for the Accident Insurance Company of Chattanooga, Tenn. On the 8th day of September, 1928, the appellee was employed as solicitor of insurance by H. C. Conley, manager of the railroad department of the Provident Life & Accident Insurance Company of Chattanooga, Tenn. At the time of his injury, he had been off duty as chief engine dispatcher on a leave of absence for about two weeks. Although he had a contract as solicitor with Conley's insurance company during that two weeks, he had not solicited nor written any insurance.

At the time he was injured, he was at his home, going after a bucket of coal for use in his home. While doing so, he passed between the garage wall and the garage door which had been taken off its hinges. The top part of it was leaning against the wall of the building and, as he passed through this opening, the door slipped, fell, and struck his shoulder. He was totally disabled therefrom, and has been unable to resume his duties as chief engine dispatcher or clerk. He has suffered severely, and was compelled to sit up of nights between pillows, unable to raise his arm from his shoulder to his elbow; cannot raise his elbow from his side to get his arm on the desk when he sits down to work. It is conclusively shown by the evidence that the appellee after he obtained his first leave of absence, did not in fact engage in soliciting insurance under his employment with the insurance company. One vital question to be determined is, "What was his occupation at the date of his injury?"

"Occupation" is defined by Webster's New International Dictionary in these words: "That which occupies, or engages, the time and attention;

the principal business of one's life; vocation; employment; calling; trade."

Couch on Insurance, vol. 5, sec. 1139, reads in part as follows:

". . . The word 'occupation' has reference to the principal or regular business of a man's life, or that to which he devotes his time and attention, such as trade, profession or other vocation or calling, or that which principally takes up one's time, thought and energy, especially one's regular business or employment, or whatever one follows as a means of making a livelihood; the principal or usual business in which a man engages. . . ."

The fact that appellee before he received his injury obtained a leave of absence from the railroad company, without his statements upon the witness stand in which he gave his occupation as clerk or chief engine dispatcher, establishes with a reasonable degree of certainty that he had not abandoned his occupation of chief engine dispatcher, and had not intended to take up a new and different occupation to engage exclusively in the insurance business. Changing occupation necessarily means engaging in another employment as a usual and regular business. The policy in its use of the word "occupation" should receive a reasonable construction. In fact, it is a recognized principle in the law of insurance that the policy will be given a practical and rational construction, one consistent with reason and common fairness rather than enforcing a forfeiture, if the terms of the instrument will fairly and justly permit it. Rathbun v. Globe Indemnity Co., 107 Neb. 18, 184 N. W. 903, 24 A. L. R. 191.

In Hagman v. Equitable Life Assurance Society, 214 Ky. 56, 282 S. W. 1112, 1114, the policy covered and protected against a disability if the insured was "permanently unable to engage in any occupation or perform any work for compensation." See National Life & Accident Ins. Co. v. O'Brien, 155 Ky. 498, 159 S. W. 1134.

In Fidelity & Casualty Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080, 1082, the disability insured against was "total illness disability that continuously prevents the assured from performing each and every duty pertaining to his occupation." In that case the stated occupa-

tion was retail groceryman. In considering the case, we used this language:

> "From this provision it is clear that the amount to be paid the insured depends upon his occupation at the time of his injury, and that, if he is totally disabled to follow that occupation, he is entitled to the sum that he would have received had he been engaged in this occupation at the time the policy was issued."

The language of the policy here obligates the company to pay the insured when "such injury" shall, independently of any and all other cases, immediately, totally, and continuously disable the insured from and after the time "such injury" was received and prevent the insured from performing any and every kind of work pertaining to his occupation of clerk, office duties only.

This provision of the policy plainly brings it within the interpretation given the policy in the Bynum Case, supra. It remains to determine his occupation at the time he was injured. A person may engage in more than one occupation, as where he pursues one business during a part of each year and for the remainder of the year pursues a seasonable occupation. His rights as an insured is based on the actual facts as to what he was doing at the time he was injured, and not upon whether he, when the season came around, engaged temporarily in a seasonable occupation. Stewart v. Mass. Accident Co., 96 Conn. 561, 114 A. 657. One may pursue his chief occupation and as a side line carry on another without abandonment of his chief occupation. So where, as in the case of Midland Cas. Co. v. Anderson, 65 Colo. 32, 172 P. 1067, the usual occupation of the insured was that of mine superintendent, the fact he temporarily acted as timber man, a more hazardous occupation, while waiting to resume his usual occupation, it was held, did not constitute a change of occupation of the insured.

Under the general definition, "occupation" means one's regular business or employment. One has a regular occupation, though he may be temporarily out of its pursuit and engage in another business, yet properly give his regular occupation as his true occupation. In the case of Sovereign Camp. W. O. W. v. Craft, 208 Ala. 467, 94 So. 831, a carpenter gave his occupation as a "carpenter" although he was at the time employed as a "handy-man" in an ore mine.

In Pacific Mut. Life Ins. Co. v. Van Fleet, 47 Colo. 401, 107 P. 1087, 1092, the court said:

"A change of occupation, such as will defeat the policy, must be a permanent change, or a temporary change which, in all substantial respects, for the time being is a change of occupation."

In Taylor v. Illinois Commercial Men's Ass'n of Chicago, 84 Neb. 799, 122 N. W. 41, 24 L. R. A. (N. S.) 1174, it was held that the change (of occupation) referred to in the policy means "the substitution of one business or vocation for the other as the usual business or vocation of the assured, and did not refer to a casual or incidental resort to other activities for 30 days, where the vocation described in the policy was not abandoned and it was undisputed that the assured expected within a few days to continue his usual vocation."

In Stone v. U. S. Casualty Co., 34 N. J. Law, 371, a school teacher out of employment was killed as a result of a fall from the second story of a barn, which he was having built, and the court held that the words "changing occupation" meant engaging in another employment as a usual business.

In Simmons v. Western Travelers Accident Ass'n, 79 Neb. 20, 112 N. W. 365, the insured was a traveling salesman, and had been out of employment about two years, and during that time had resided on his father's ranch in Texas. He had performed services for his father, but had received no wages, he was killed by accident, and, in an action to recover on an accident policy, it was held that he had not changed his occupation within the meaning of the policy.

In the Taylor case, supra, the court said: "A man may have more than one vocation and engage in an additional occupation without abandoning the one described in his policy, and, if he does so, he does not necessarily change his vocation, unless the one is substituted for the other."

At the time the appellee received his injuries, he was engaged in "ordinary duties about his residence." His injury did not result from a risk incident to the insurance business nor his work as clerk or chief engine dispatcher. Besides this fact, the testimony discloses that, although he made arrangements with the insurance company to solicit insurance, he had not in fact engaged in that business at any time prior to his injury. Even if

the case be viewed on the theory that he had a double occupation at the time of his injury, not having been injured while engaged in other than his ordinary household duties at the time of his injury, his right to recover on the policy is unaffected by the mere fact that he had merely contracted two weeks prior to his injury with the insurance company to solicit for it. Thorne v. Ætna Life Ins. Co., 155 Minn. 271, 193 N. W. 463.

Measuring the evidence by the applicable law, we are not prepared to say that the trial court erred in peremptorily instructing the jury to find for the appellee as to this issue.

Next it is insisted that the appellee "worked as an insurance solicitor following his injury, and that his subsequent disability is not compensatory because his disability was not immediate and continuous from the date of the accident."

The language of the policy in this respect is that the appellee will pay "when 'such injury' shall, immediately, totally and continuously disable the insured from and after the time 'such injury' was received and prevent the insured from performing any and every kind of work pertaining to his occupation 'of clerk or engine dispatcher.'" His duty in this occupation was "calling crews, making assignments, keeping the crew book, writing the names from the yard book upon the Kentucky register, and the E. K. register, and transferring them to the day book; marking the crews out, marking them in, in fact 'it is an eight hour day hard writing.'"

The evidence as to the work and nature of the work demanded by his occupation as clerk or chief engine dispatcher is not disputed, nor is his physical condition immediately following, and continuing since, disputed. The argument is offered that some time subsequent to his injury he wrote insurance and for newspapers, that such evidence shows, not only a change of his occupation, but establishes that he was not by his injury prevented "from performing any and every kind of work pertaining to his occupation" as clerk or engine dispatcher. His testimony in regard to soliciting insurance and writing for newspapers and description thereof are not disputed. The work performed as described by him in soliciting insurance "was just a small amount of writing, filling the man's name in his application, and filling out the blanks." In regard to the newspaper writing, he gathered clippings from newspapers, his

wife writing the notes in reference to them. Such was not a change or abandonment of his occupation of clerk or chief engine dispatcher, nor proof that he was not totally disabled by his injury, within the meaning of the policy.

A reasonable construction of the clause in question should be given it, i. e., one that is as just to the insured as it is to the insurer is the end to be attained. If the disability of the insured is such as to prevent him from doing all the substantial acts required of him in his business, it is to be regarded as a total one. And "while it is difficult to state a general rule of construction that will be applicable to all cases, we think we may safely state, as an elaboration of our views upon this subject, that a recovery should not be denied under such a clause as we have before us when the evidence shows that the insured was able to be up and about, and to do minor and trivial things not requiring his time or attention, or to direct his business and do some of the work himself, if his injuries are such that common prudence demands he desist from his labors." Doyle v. N. J. Fidelity & Plate Glass Ins. Co., 168 Ky. 789, 182 S. W. 944, 945, Ann. Cas. 1917D, 851; Hartford Accident & Indemnity Co. v. Davis, 184 Ky. 487, 210 S. W. 950; Consolidation Coal Co. v. Crislip et al., 217 Ky. 371, 289 S. W. 270, 272.

"One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated." Consolidation Coal Co. v. Crislip, supra; Ætna Life Ins. Co. v. McCullagh, 195 Ky. 136, 241 S. W. 836.

It is apparent that the appellee in his condition as it is described by the evidence, not only could not have procured employment as clerk or train dispatcher, but could not have retained it in his physical condition directly and continuously resulting from his injury. If the policy is given a fair and reasonable construction, it cannot be said that the court erred in giving a peremptory instruction as to this issue. Fidelity & Casualty Co. v. Bynum, supra; Fidelity & Casualty Co. of New York v. Logan, 191 Ky. 92, 229 S. W. 104, and cases cited.

The policy provides that the insured shall not be paid for his injury, "unless he is continuously, by reason of his injury necessarily under the regular treatment at least semi-monthly of a legally qualified physician or surgeon." It is argued that the appellee failed

to allege and prove facts sufficient to bring his right to recover within this provision of the policy. It may be suggested as a reason for disregarding this argument that appellant did not by any pleading nor by the offering of any evidence present this defense on the trial in the circuit court. To avail itself of this provision of the policy it was incumbent upon it to plead and prove the appellee's failure to comply with such provision of the policy, or at least raise an issue in some manner in the circuit court.

It presented no demurrer to the petition, filed no answer, and offered no instructions bearing on such issue. It is a fixed rule of this court that a question not raised by the pleadings will not be considered on appeal. Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493. A question not raised nor adjudicated in the circuit court will not be considered by this court. Bowling's Adm'x v. Davis, 103 Ky. 187, 44 S. W. 643, 45 S. W. 77, 19 Ky. Law Rep. 1859; Fish v. Fish, 184 Ky. 700, 212 S. W. 586. A question of law which is not presented to, nor passed upon by, the trial court, cannot be raised here for the first time. Maysville Telephone Co. v. First National Bank, 142 Ky. 578, 134 S. W. 886; Louisville & N. R. R. Co. v. Allen, 152 Ky. 837, 154 S. W. 371; Jefferson's Adm'r v. Bogard's Adm'rs, 159 Ky. 376, 167 S. W. 150; Walters' Guardian v. Ransdell, 218 Ky. 267, 291 S. W. 399. If the appellee was not treated and cared for by a physician as here complained of, it was a defense which the appellant should have presented by answer. A defense not relied on in the trial court will not be considered on an appeal to this court. City of Frankfort v. Jones, 207 Ky. 289, 269 S. W. 326. It was set up as a defense in the answer of appellant that the appellee failed to give it notice of his injury. He testifies that he gave notice, and his statement relative thereto is not disputed.

Lastly, the appellant insists that the court erred in failing to instruct the jury to allow it credit by accrued premiums, and cites in support of this contention Crouch. Ency. of Insurance Law, vol. 3, sec. 616, and Rogers v. Union Benevolent Society, 111 Ky. 598, 64 S. W. 444, 23 Ky. Law Rep. 928, 55 L. R. A. 605; Citizens' Life Insurance Co. v. Boyle, 139 Ky. 1, 129 S. W. 303; Supreme Council, C. K. A. v. Wathen, 179 Ky. 64, 200 S. W. 320. There does not appear any similarity of the questions considered by the authorities cited and the

one presented. But, waiving this, it is not shown by the evidence that there were at the time of the trial any accrued premiums unpaid; no motion, instruction, or pleading was offered by the appellant calling the attention of the trial court to this question, and, under the rule enunciated in the cases supra, this court cannot review it.

On a consideration of the whole case, it is apparent that appellant received a fair and impartial trial, and that no error was committed by the court in giving to the jury a peremptory instruction.

The judgment is affirmed.