## Aetna Life Insurance Co. v. Daniel.

(Decided Dec. 12, 1933.)

EDWARD L. ALLEN for appellant.
WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This action involves a group policy of insurance, issued September 17, 1923, to the North-East Coal Company by the Ætna Life Insurance Company of Hartford, Conn. The annual premiums without any cost whatsoever to its employees were paid by the North-East Coal Company. The policy insured, as per its terms, the lives of the employees who were under 60 years of age, against total and permanent disability so long as they continued in the employ of the coal company. It divided them into two groups, office employees and ordinary laborers. The maximum insurance on the lives of the first group was $2,000 each, and

on the latter, $1,500. They were not eligible to the benefits of the policy until they had worked for the coal company for a period of six consecutive months. If the employee ceased to work for the coal company, his certificates were canceled on the cessation of his employment. There was issued and delivered contemporaneously with the group policy, to Warren Daniel, an employee of the coal company, a certificate of $500, and thereafter a certificate of $100 for the years 1924, 1925, 1926, 1927, 1928, 1929, and 1930, aggregating $1,200 was delivered. The annual premiums on the group policy were paid by the coal company to the insurance Company from the date of its issuance, 1923, during all of the intervening years up to and until January 1, noon, 1932, when it was canceled. A rider was attached to the group policy, which contained a statement that the policy was automatically to expire, without privilege of further renewal, on January 1, 1932.

Daniel was laid off by the coal company from August, 1931, to November, 1931, and again on February 29, 1932. He claims that he was excused by the coal company from continuing in the work for it on account of bad health. The Ætna Life Insurance Company contends that Daniel's employment with the coal company ceased on the 31st day of July, 1931, and later, November 2, 1931, he went back in the service of the coal company. At the time he left its employment, in July, his name was dropped from the pay-roll, and the group policy, as to him, was canceled as of July 31, 1931. It claims that when he resumed work in November, 1931, he was taken back by the coal company as a new employee and that thereafter he had to continue in the service of the coal company for a period of six months before he would be eligible for insurance. For this reason it insists that he was not reported by the coal company as an employee under the group policy. The policy carried a provision that when the employee insured thereunder leaves the employ of the coal company it is automatically canceled as to him. It canceled Daniel's certificates before November 2, 1931; but the policy, itself, was not canceled until January, 1932. Also, the insurance company claims that Daniel again left the employment of the coal company in February, 1932; that at that time he was laid off on account of the reduction of the number of employees by the coal com-

pany. After the policy was canceled in July, 1931, the coal company paid to the insurance company no premiums on the group policy for Daniel.

The insurance company refused to recognize and pay the certificates issued to Daniel under the group policy; hence this action.

Daniel's cause of action is based on the certificates. The answer of the insurance company contains four separate paragraphs. The first is a traverse. The second presents as a defense a clause in the policy, which reads:

> "If you are sick or absent on account of other excusable causes, you are requested to report same immediately to this office. If ten days of absence is unexplained it will be understood that you left our employ and your insurance will be canceled."

The third paragraph relies upon a provision in the policy respecting total and permanent disability, and charges such disability did not exist for a period of at least six months before the commencement of the action and that this provision is a bar to Daniel's recovery. The fourth relies upon the cancellation of the policy, as to Daniel, on the 31st day of July, 1931.

The issues were formed by appropriate pleadings, and on a trial before a jury, a verdict was returned in favor of Daniel of $1,200.

The insurance company urges it was entitled to a directed verdict at the close of all the evidence, that incompetent testimony was admitted, and the instructions are erroneous.

The basis of the argument that the verdict should have been directed for it is: (a) The insurance was canceled and terminated July 31, 1931; (b) Daniel had not been employed by the coal company for six months as provided in the group policy; (c) the evidence failed to establish that his disability was permanent and total, or originated either prior to July 1, 1931, or January 1, 1932, and the pay-roll records of the coal company together with the testimony of its officials are conclusive of this question; (d) and that even if his disability be regarded as permanent and total, it did not originate until after the cancellation of the group pol-

icy and after Daniel had left the employment of the coal company.

If the testimony of Daniel be utterly disregarded and only the pay-roll record of the coal company and the testimony of its officials are considered, the insurance company is correct in its presentment of the issues.

Daniel testifies unequivocally that he was laid off solely because of his health, and the pay-roll records and the testimony of the officials show that he voluntarily without an excuse left the employment of the company in July, 1931, and also in February, 1932, and that when he returned to work for it, it treated his returning and resumption of his work as a new or independent employment. Such conflicting evidence as to this issue was sufficient to authorize the submission of the case, as to it, to the jury. It accepted the testimony of Daniel, and not that in its behalf as to this issue. It scarcely needs citation of authority to sustain the statement that in testing the correctness of the giving or refusing to give a peremptory instruction, only the plaintiff's evidence can be considered. Gaines' Adm'x v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348; Duff v. May, 245 Ky. 709, 54 S. W.(2d) 4. When reviewing the act of the court, in the giving or refusing such an instruction, it is only our duty to determine whether there is a scintilla of evidence, and, if so, it is improper to give a peremptory instruction. Only when it will be bound to find a verdict for the defendant under the proof, it is proper for the court to instruct the jury peremptorily to find a verdict for the defendant. Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630; Louisville & N. R. R. Co. v. Mounce's Adm'r, 90 S. W. 956, 28 Ky. Law Rep. 933; Rogers v. Felton, 98 Ky. 148, 32 S. W. 405, 17 Ky. Law Rep. 724; Illinois C. R. Co. v. Gholson, 66 S. W. 1018, 23 Ky. Law Rep. 2209; Sinclair's Adm'r v. I. C. R. R. Co., 129 Ky. 828, 112 S. W. 910; Reliance Coal & Coke Co. v. L. & N. R. R. Co., 203 Ky. 1, 261 S. W. 609, and authorities cited. There is no room for doubt that the evidence abundantly establishes Daniel's disability, the date of its beginning, and that it was both permanent and total, within the meaning of these terms as they are used in the policy. Equitable Life Assurance Society of U. S. v. Branham,

250 Ky. 472, 63 S. W. (2d) 498, and cases cited. The insurance company offered no evidence on the issue as to his disability, and that in behalf of Daniel is without contradiction. Therefore the insurance company was not entitled to a peremptory instruction on this issue. The evidence as to this question made an issue as to it for the jury.

In its brief, the insurance company criticizes instruction No. 2, which reads:

> "The court instructs the jury if it believes and finds from the evidence that the plaintiff, Warren Daniel, at least six months before October 7th, 1932, and while the policy in evidence was in full force and effect and before he attained the age of sixty years became totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work of financial value, then the law is for the plaintiff and you will find for him in the sum of $1,200.00."

This instruction fairly presents Daniel's right to recover as per the terms of the policy, without taking cognizance of either of the company's affirmative defenses. It argues that instruction No. 2 is erroneous because it only required the jury to believe that Daniel became totally and permanently disabled within six months before October 7, 1932, when an employee of the coal company testified that the group policy as to him was canceled in July, 1931. As we have observed, the instruction was predicated on Daniel's theory of recovery as based on the policy, and the testimony of the employee tended to establish the affirmative defenses of the insurance company. We have often reiterated the rule that the trial court is not required to give on his own accord instructions in a civil case, nor unless written instructions are offered by the parties. Deer Creek Mining Co. v. Moore et al., 200 Ky. 553, 255 S. W. 123. If the insurance company desired an instruction tions presenting either or all of its defenses. Having presenting either of its affirmative defenses, and which it conceived was sustained by the record of the coal company, the testimony of its officers, or of the other witnesses in its behalf, it was its duty to offer instruc-

railed to do so, it cannot now complain in this court of the failure of the trial court so to instruct the jury, nor escape the result of its failure to observe its duty in this respect, although either or one or more of its defenses may be supported by the evidence in its behalf. Its ground of objection to the instruction of the court, here presented, is equivalent to complaining that the court failed in his instructions to present one or more of its defenses as set up in its answer and as it attempted to establish by the evidence.

Complaint is also made of the instructions of the court because they authorized the jury to award Daniel judgment on the $500 and seven of the $100 certificates of insurance. Daniel appeared on the witness stand twice, and on both occasions, without objection, testified there had been issued and delivered to him the $500 certificate and seven $100 certificates. Of course, the certificates, themselves, were the best evidence of the number thereof actually issued and delivered to him. The insurance company had the undoubted right to require him to produce the certificates on which his action was based. If it had seasonably exercised this privilege, the certificates thereby would have become a part of the evidence. Instead, it voluntarily proceeded to trial, permitted Daniel to testify without objection as to the number of certificates issued and delivered to him, acquiesced in the submission to the jury the issue on his testimony and that in its behalf, as to the number of certificates that had been issued and delivered to him. It is plain that on such evidence, the court properly permitted the jury to determine the number of the certificates and the amount of the recovery thereon.

On the conflicting evidence it was a question for the jury to determine the number of certificates issued and delivered and the amounts thereof. It accepted the statements of Daniel. With his statements in the record, as to the number of certificates that had been issued and delivered to him, it cannot be said there is no evidence showing that only the $500 certificate and six of the $100 certificates had been issued and delivered to him.

R. C. Thomas, superintendent of the coal company, on cross-examination, was asked if he reported the injury and claim of Daniel. His response was in the af-

firmative. Following the answer he was further asked if he had not written a letter in the first paragraph of which he had stated that Daniel was in the employment of the coal company continuously up to February 29, 1932. He answered that he had made the statement in the last sentence of the first paragraph, but that it was a mistake. He admitted that he had presented by the letter the claim of Daniel and did so after the policy was canceled. Neither the questions, nor the answers, were objected to. Thereafter he was asked if he had a carbon copy of the letter. He answered that he did have it. He was requested to read it to the jury. On an objection to this question it was not answered. On a recross-examination he was required to answer if in the last paragraph of the letter he had not stated that Daniel's disability occurred prior to January 1, 1932, and had requested benefits therefor for him. This question was objected to and the objection was overruled. That the question and the answer thereto were incompetent cannot be doubted, except to affect the credibility of the witness. In view of the fact that the witness on original cross-examination had stated to the jury that he had made the statement in the letter, but that it was a mistake, based on his understanding at the time the letter was written, the admission of the later question objected to at the time it was propounded and the answer thereto, even though incompetent, in the circumstances, was a harmless error, not prejudicial to the substantial rights of the insurance company, authorizing a reversal. Civil Code of Practice, secs. 134 and 756, and annotations.

It is argued that Daniel's cause of action is based on the certificates of insurance and not on the group policy, and that on this ground a peremptory should have been given. We reviewed the identical question in Equitable Life Assurance Society of U. S. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498, 499, and also in John Hancock Mutual Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848. In those cases, as in the present one, the insurance company, without objection, filed its answer setting forth the group policy, its conditions, terms, and provisions. In the Equitable Life Assurance Society of U. S. v. Branham, we said:

"Failure of the appellant to present in the trial court its objections to the several actions being

based on the certificates instead of the policy and its answer setting forth the policy and the filing of the same, were a waiver of the objections here and now presented."

These cases are conclusive in the present one as to question of the suing on the certificates instead of the policy.

Perceiving no error prejudicial in the substantial rights of the insurance company, the judgment is affirmed.