## Equitable Life Assurance Society of United States v. Reynolds.

(Decided Feb. 12, 1935.)

**(As Modified on Denial of Rehearing June 4, 1935.)**

WILLIAM MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellants.

JOHN T. DIEDERICH for appellee.

Opinion of the Court by Judge Richardson—Affirming.

This is an appeal from a judgment entered on the verdict of the jury for the amount of certificates of the Equitable Life Assurance Society of United States, issued to Emmett Reynolds, in accordance with a group policy issued by the Equitable to the American Rolling Mill Company, Ashland, Ky.

506

The Equitable summarizes its grounds of reversal thus: "Reynolds' action is premature because he filed this suit before the benefits were payable;" he "cannot recover on the individual certificates;" "his action is on the group policy and the group policy must be introduced as evidence or its absence explained;" "there was no evidence that while Reynolds was insured (prior to May 3rd, 1934), he became 'wholly disabled,' so that he would be 'wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupations;'" his "medical evidence refers only to the condition of his health after his employment terminated; it does not disclose what that condition was before Reynolds' employment terminated;" "the X-ray picture and the opinion based on it were incompetent;" "there is no evidence * * * that Dr. Rice advised Reynolds not to work;" "the hypothetical question by which Reynolds sought to prove tuberculosis did not correctly reflect the evidence and embraces facts which were not proven;" "the court incorrectly defined the meaning of the phrase 'presumably permanent;'" it "erroneously permitted Reynolds, after the verdict had been returned, to amend his petition setting up a new cause of action."

In our consideration of the case we shall confine ourselves to these grounds, considering all others, if any, waived by the Equitable. We shall consider them in the order in which we have stated them.

The suggestion that this action is premature is as it appears from the record, here presented for the first time. The objection that the suit was instituted before the benefits accrued was a matter of abatement which the Equitable waived by a failure to plead. Kenton Ins. Co. v. Downs, 90 Ky. 236, 13 S. W. 882, 12 Ky. Law Rep. 115; Nickels v. Board of Councilmen of City of Frankfort, 111 S. W. 706, 33 Ky. Law Rep. 918. The argument that Reynolds' cause of action is predicated on the individual certificates and *not* on the group policy, and that the latter was not introduced as evidence nor its absence explained, is presented in this court for the first time. The petition states facts sufficient to constitute a cause of action on a policy of life insurance, and bases the same on the certificates, which were the obligations of the Equitable on which a recovery was sought. Its allegations were denied by answer,

without objection; no demurrer was filed or a motion entered to require the group policy to be presented as a foundation of his cause of action. Instead of availing itself of its right to object to Reynolds seeking to recover on the individual certificates, it elected to join issue and proceeded to participate in the trial.

The objection to the action being based on the certificates was neither raised in nor passed upon by the trial court. We cannot consider a question or an issue neither raised in nor passed upon by the trial court. Bennett v. Knott (Ky.) 112 S. W. 849; Benefit Ass'n of Railway Employees v. Secrest, 239 Ky. 400, 39 S. W. (2d) 682; Sheeran, Bro. & Co. v. Tucker, 166 Ky. 483, 179 S. W. 426; Marshall's Adm'r v. Corinth Bank & Trust Co., 226 Ky. 361, 10 S. W. (2d) 1076; Sargent v. Whitfield & Co., 226 Ky. 757, 11 S. W. (2d) 926; Bowling's Adm'x v. Davis, 103 Ky. 187, 44 S. W. 643, 45 S. W. 77, 19 Ky. Law Rep. 1859; Fish v. Fish, 184 Ky. 700, 212 S. W. 586.

If the group policy contained a provision contrary to, or in conflict with, the certificates upon which the suit is based, constituting a defense, in whole or in part, to the sum sued for, and if the Equitable desired to avail itself thereof, it was incumbent on it by an appropriate procedure to request the court to compel Reynolds to sue upon the group policy or produce it as proof. If it conceived then as now the group policy was the contract of insurance upon which alone he could sue and recover, it should have presented its objection and resorted to the appropriate remedies provided in such cases, in the trial court. It is too late to do so in this court.

The failure of the Equitable to present in the trial court is objection to the action being based on the certificates instead of the policy was a waiver of its right after a trial on the merits, or now, to object to the action being based on the certificates. Equitable Life Assur. Soc. of U. S. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498; Ætna Life Ins. Co. v. Daniel, 251 Ky. 760, 65 S. W. (2d) 1025; Equitable Life Assur. Soc. of U. S. v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12.

The argument, "there is a failure of evidence" showing Reynolds became "wholly disabled," so that he

would be "wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupations," entirely disregards the evidence.

Reynolds testified he became sick prior to May 2, 1931 The symptoms of his ailment were "heart flutter," "smothering spells," "shortness of breath," "weak" and "nervous," "go to pieces with the least bit of exertion," and "climbing a flight of stairs exhausted him." On April 2, 1931, and thereafter, he was examined "several times" by Dr. Rice, the physician of the American Rolling Mill Company, who pronounced his disability such as to disqualify him as an employee of the American Rolling Mill Company. He was laid off on account of his health at the direction of Dr. Rice; he returned and again was laid off at his direction. Dr. Humphrey, who had known Reynolds for twenty years, began to treat him in May, 1931, and had him under observation "more or less" constantly since that time. He first examined Reynolds "by the method of percussion and oscillation" and a stethoscope; later with the X-ray, which confirmed his opinion. It was his "distinct opinion" that Reynolds' ailment was "a dilated heart"; that is, the cavities and the walls were stretched and had lost their power to force the circulation over the body. Also it was his opinion that his condition was incurable and totally and permanently disabled him. Dr. DeBord examined Reynolds with a stethoscope, and it was his opinion he had "an enlarged heart with low blood pressure," and he was totally and permanently disabled "on account of the condition of his heart." In April, 1932, Dr. Woods, for the Equitable, examined him and was unable to determine he had "enlargement of the heart" or discover he was disabled in any respect. In December, 1932, Dr. McGehee, for the Equitable, also examined him and it was his opinion his "heart was regular in tone," "no murmur" and "no enlargement." However, on cross-examination, he admitted he discovered he had "a mitral regurgitation"; "that is, a leakage of the heart."

It is not doubtful that the evidence, though conflicting, is amply sufficient to authorize a submission of this issue to the jury and to sustain its verdict. Equitable Life Asurance Soc. of U. S. v. Merlock, supra.

Our resume of the evidence is a confutation of the argument that the "medical evidence refers only to the

condition of his health after his employment terminated," or does not disclose Reynolds' condition before the termination of his employment.

The condition of Reynolds' health before he was laid off in May is described by him. Dr. Humphrey's testimony as we have stated it corroborates his statement and furnishes "medical evidence" as to his condition at the time he was laid off and subsequent thereto. However, the testimony of Reynolds alone is sufficient to establish that his total disability occurred before the termination of the policy.

Reynolds' testimony to the effect he was afflicted with "heart trouble" before he ceased to work was sufficient to establish he had become totally and permanently disabled within the certificates before he was laid off in May, 1931. See Equitable Life Assur. Soc. of U. S. v. Merlock, supra. It was not imperative that causal connection between his ailment before he was laid off and thereafter be shown by expert testimony. Pacific Mutual Life Ins. Co. v. Cash, 224 Ky. 292, 6 S. W. (2d) 239; Phillips' Committee v. Ward's Adm'r, 241 Ky. 25, 43 S. W. (2d) 331; DeFilippo's Case, 284 Mass. 531, 188 N. E. 245. Even if the rule was otherwise, the testimony of Dr. Humphrey abundantly fulfills its requirements.

It is shown without contradiction that Dr. Rice, the physician of the American Rolling Mill Company examined Reynolds before he was laid off in May 1931. It plain to be seen that, if Reynolds' testimony and that of Dr. Humphrey describing his ailment at that time was not sufficient to show the actual condition of his heart before he was laid off, or if their testimony as now insisted was not worthy of credit, it would have been easy for the Equitable to produce Dr. Rice as a witness and thus brought to the jury testimony entitled to verity, establishing the actual condition of Reynolds' health prior to, and in, May, 1931. The insistence that he was not sick and was not laid off on that account, together with its failure to call Dr. Rice or to explain its failure to call him, warrants the inference that Dr. Rice would not contradict, but, corroborate, their testimony, and for this reason alone it did not avail itself of its right to produce him as a witness. Rice v. Rice,

243 Ky. 837, 50 S. W. (2d) 26; Grand Lodge, Brotherhood of Railroad Trainmen v. Bash, 251 Ky. 826, 66 S. W. (2d) 25.

It is charged in brief that the X-ray picture taken by Dr. Humphrey and his opinion based thereon are incompetent. Dr. Humphrey accurately details how the picture was taken and explains its reading. Other than the mere assertion the picture and his opinion based thereon are incompetent, no authority, logic, or reason is presented supporting the charge that they are incompetent.

It is true the picture may not have been taken according to text-book rules; this fact merely affected its weight as evidence and of the testimony of Dr. Humphrey based thereon, but did not render either incompetent.

The Equitable introduced many pages of an authority outlining the method and defining the proper manner in which to X-ray the human heart to determine its condition and functioning. It was a question for the jury to accept the testimony of Dr. Humphrey concerning the X-ray picture produced by him or this author's theories.

The fact the theory of the author conflicted with that of Dr. Humphrey does not render Dr. Humphrey's picture, or his opinion based thereon, incompetent.

The insistence that "the hypothetical question relating to tuberculosis did not correctly reflect the evidence nor embrace facts which were proven" is immaterial, because the testimony of the physicians who testified in behalf of Reynolds, as well as those who testified in behalf of the Equitable, clearly shows that he was not afflicted with tuberculosis, and no effort was made to establish he had tuberculosis. No recovery was or is sought because of this disease. The hypothetical question appears to have been asked merely to test the ability of the witness as an expert. Considering it as susceptible of the criticism offered against it, it is immaterial, as Reynolds was not disabled from tuberculosis nor is the recovery therefor.

The criticism of the court's definition of the term "presumably permanent" is unsound. Its language is substantially that employed by this court in Mutual

Life Ins. Co. v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961. See Equitable Life Assur. Soc. of U. S. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703; Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, and cases cited.

In the trial of the action, the parties, their counsel, and the court treated Reynolds' right to recover, and the liability of the Equitable controlled by the certificates and rider; one for $1,000, another for $333 with a rider attached, also for $333, totaling $1,666. The certificates and rider were introduced and read as evidence. No objection was made to their introduction. Instead of objecting to their introduction, the record discloses that its counsel at the time of their introduction "advised that they were willing to stipulate that the certificates above referred to were issued to the plaintiff at the times shown on the policies and for the total sum of One Thousand Six Hundred and Sixty-six ($1,666.00) Dollars."

Also "it was stipulated and agreed that on April 12th, 1932, the plaintiff, through his attorney, Mr. John T. Diederich, mailed due proof of his claim to Mr. Roy Stalnaker, c/o the American Rolling Mill Company, Ashland, Kentucky. And that Mr. Stalnaker was at that time personal supervisor of the American Rolling Mill Company, and that he was the proper official of the American Rolling Mill Company to receive such proof, and that the certificates sued on herein were issued by the defendants through the American Rolling Mill Company."

In his petition Reynolds omitted to set up his right to the $333 evidenced by the rider. His prayer thereto was for $1,333 and interest. The court by its instructions submitted to the jury the question of the total presumably permanent disability of Reynolds for life. It did not instruct the jury, nor did the Equitable request it to do so, concerning the group policy, or the certificate of insurance offered, and the jury returned no verdict relative to either. The sole issue to which the evidence was directed was the claimed total permanent disability of Reynolds. The amount of his recovery as evidenced by the certificates and the rider and the liability of the Equitable therefor was conceded, and so treated by the parties, their counsel and the court, to be $1,666.

The instructions of the court did not inform the jury of the amount to which Reynolds was entitled or for which the Equitable was liable; nor did its verdict fix the sum of the recovery. It reads: "We, the jury, agree and find for the plaintiff." Reynolds, after it was returned, offered an amended petition to conform to the facts, setting up the rider for $333, and prayed a recovery for $1,666 instead of $1,333. The Equitable objected to the filing of it. Its objection was overruled. It reserved an exception. Thereupon a judgment was entered for the $1,666. This was the amount agreed upon by the counsel of the Equitable during the progress of the trial. The rider and the agreement of the Equitable authorized and sustained the allegations of the amended petition. The judgment was fully authorized by the verdict of the jury. In the circumstances, it would have been an abuse of discretion on the part of the court to refuse to permit the filing of the amended petition. Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037; Cities Service Oil Co. v. Taylor, 242 Ky. 157, 45 S. W. (2d) 1039, 79 A. L. R. 1374; Lindsey v. Home Ins. Co., 244 Ky. 580, 51 S. W. (2d) 924; Section 134 of the Civil Code of Practice. The court may at any time before judgment in furtherance of justice cause or permit a pleading to be amended to correct a mistake in any respect as long as the amendment does not change substantially the claim or defense so as to make the pleadings conform to the facts proven. The court has a wide discretion when determining the right of a party to amend his pleadings. The only limitation is, the amendment must be in furtherance of justice and not substantially change the claim or defense. Lampton v. Staebler, 252 Ky. 405, 67 S. W .(2d) 473; Western Union Tel. Co. v. Chas. C. Brent & Bros., 191 Ky. 503, 230 S. W. 921; Aylor v. Aylor, 158 Ky. 713, 166 S. W. 216; Moore v. Damron, 157 Ky. 799, 164 S. W. 103.

Having agreed the amount of the certificates and rider was $1,666, it is apparent that the objection to the filing of the amendment was the equivalent of a repudiation of the agreement. At least it cannot be said that, with the agreement in the record showing the amount to be $1,666, the filing of the amended petition conforming to the certificates and rider is prejudicial to any of its rights. It is not impertinent to say that most, if not all, of the grounds for reversal now presented were

waived by the Equitable either by the steps taken or emitted and the agreement of the Equitable during the progress of the trial in the circuit court. A party cannot assume and maintain in this court a theory of his case opposite to that which he presented and relied upon in the trial court. It is our duty to try and determine the case presented and tried in the lower court. After the evidence was closed, Reynolds recalled Dr. Woods for further cross-examination. He could not be obtained. Thereupon he offered to introduce as evidence a statement of Dr. Woods dated April 18, 1932. The Equitable furnished a copy of Dr. Woods' statement of that date, but objected to its introduction. The court overruled the objection and permitted it to be introduced and read to the jury to which it again objected, but agreed the statement was the one which Dr. Woods used on the witness stand and that he was the author of it. "It was agreed that counsel for plaintiff might read such statement without Dr. Woods being present, subject to objection as to relevancy, competency and materiality." The court thereupon admonished the jury to consider the statement as a part of the cross-examination of Dr. Woods. It is a statement which he had previously made. It was the same as Dr. Woods' statement on the witness stand but was no way prejudicial. The court properly admonished the jury. If it was not the purpose of counsel of the Equitable to withdraw his objection to the introduction of the statement of Dr. Woods by his agreement that it might be read without Dr. Woods' presence, "subject to objection as to relevancy, competency and materiality," its admission was not such a prejudicial error as to warrant a reversal.

It is our conclusion the Equitable was awarded a fair and impartial trial, the verdict of the jury is sustained by the evidence, and the court committed no error prejudicial to its substantial rights.

Wherefore the judgment is affirmed.