## Equitable Life Assurance Society of United States v. Smith.

(Decided June 11, 1935.)

EUGENE B. COCHRAN, WM. MARSHALL BULLITT, and BRUCE & BULLITT·for appellant.

HILL & HOBSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This suit to recover indemnity for total and permanent disability was brought upon the certificate issued under a group insurance policy. The petition alleged that the defendant had issued such policy "whereby it undertook to and did insure the lives and health" of all of the employees of the Inland Steel Company engaged in the production and mining of coal in Floyd county, Ky., for which it was· paid a valuable consideration; that by its terms and conditions and in pursuance thereof the plaintiff carried such a policy or certificate with the defendant; that in September, 1931, there was issued to him its policy of a certain number; that it provided indemnity of $51.04 a month for a period of twenty months in the event plaintiff became disabled through accident or disease. The certificate was filed with and as a part of the petition. The certificate in and of itself presents a substantially complete contract of insurance with definite terms and conditions, particularly as to what and how indemnity would be payable in case of disability. It is recited that it was furnished in accordance with the terms of the group policy which, together

with the employer's application, constituted the entire contract between the parties.

The defendant did not demur or make any motion to require the filing of the master policy. Its answer was a denial of every allegation of the petition save that it was a corporation engaged in the insurance business and that the Inland Steel Company was a corpotion. The answer was not verified. The verdict was for the plaintiff and judgment was rendered pursuant thereto for $1,020.80, payable in monthly installments of $51.04 from April 1, 1932. The case was retained on the docket until the judgment should be satisfied or plaintiff's right to receive the indemnity terminated by reason of his recovery.

The point is made on appeal that the plaintiff could not recover on the individual certificate on the theory that it is a contract of insurance. We are referred to several cases as holding that the group policy and not the certificate was the contract and reversing judgments because the certificate alone was relied on. We have examined those cases. In Equitable Life Assurance Society v. Branham, 250 Ky. 472, 63 S. W. (2d) 498 (and five other cases covered by the same opinion), it is pointed out that the defendant presented no objection to the plaintiffs' basing their respective causes of action on the certificate instead of the group policy and that it set forth the provisions of the policy in its answers. This was held to be a waiver and the cases were not reversed on that ground. The case of John Hancock Mutual Life Insurance Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848, is of like effect. While it appears there was some difference between the amount of installments stated in the certificates and a rider to the policy, it was held the modification of the contract evidenced by the rider should control, and the point as to the right to judgment on the certificate where the group policy was not made a part of the record was not involved in Equitable Life Assurance Society v. Preston, 253 Ky. 459, 70 S. W. (2d) 18; Equitable Life Assurance Society v. Dennison, 255 Ky. 296, 73 S. W. (2d) 52; Equitable Life Assurance Society v. Keck, 254 Ky. 773, 72 S. W. (2d) 466, 467; Equitable Life Assurance Society v. Sesco, 255 Ky. 298, 73 S. W. (2d) 47; Equitable Life Assurance Society v. Patrick, 255 Ky. 80, 72 S. W. (2d) 480; Equitable Life Assurance Society

v. Patrick, 255 Ky. 290, 73 S. W. (2d) 49. In Equitable Life Assurance Society v. Austin, 255 Ky. 23, 72 S. W. (2d) 716, the case turned upon a rider to the group policy changing the amount of indemnity, but it was observed that the basis of the action was the certificate issued to the insured, but his rights should be measured by the group policy as the certificate contained no promise to pay and merely notified him that he had been insured by the group policy. However, it had been brought into the case by the answer. The certificate in the instant case does contain a promise to pay. It stipulates that "payment will be made" to the named beneficiaries in case of death. The "total and permanent disability provision" made a part of the certificate stipulates: "In the event that any employee * * * becomes disabled the Society will * * * pay equal monthly disability-installments," etc. Elsewhere the certificate provides how and when payments shall be made.

The petition stated a cause of action predicated on the certificate with allegations of a contract of insurance, meaning the group policy. The plaintiff did not have this master policy in his possession and never saw it. He sued on the only instrument the company had given him. If there was any change in the terms of the contract not disclosed by this certificate, the company should have pleaded it, and if the group policy contained anything contrary to or in conflict with this instrument, or had provisions in it which constituted a defense of which it wished to avail itself, it should have filed its copy of the contract or by proper procedure have had the plaintiff produce it if he could. It is too late now to raise any question about his omission to do so. The strategy of the defense was to deny everything and admit nothing. Nuckels v. Robinson-Pettett Co., 159 Ky. 214, 166 S. W. 972; Equitable Life Assurance Society v. Reynolds, 259 Ky. 504, 82 S. W. (2d) 509.

We are of the opinion, however, that the court should have directed a verdict for the defendant because the plaintiff failed to prove his cause of action. The liability of the certificate introduced in evidence was conditioned upon the employee's becoming totally and permanently disabled while insured under the policy, and it was provided that the insurance should automatically cease upon the termination of his employment

with the Inland Steel Company. On April 1, 1932, the plaintiff testified he "quit work" and "they cut me off as a coal loader." Afterwards he went to several places and tried to get a job and was turned down. He had not tried to work in the mines since that time. After being turned down on the relief work at Pikeville, he had not tried to do anything. However, he testified: "I couldn't do anything according to my feelings." Inquiry as to his feelings was directed to the present time of the trial, which was April 7, 1934, or two years after he quit work, and he responded that he felt like he was going to fall at any time, he could not walk fast, and his head, neck, and shoulders hurt all the time. Before he quit work, he could load one or two cars of coal a day, whereas formerly he loaded seven or eight cars. Asked how he felt physically on or about April 1, 1932, he answered: "Well, in 1932, I felt just about like I do now."

Dr. Pickelsimer and Dr. Wells testified that they examined him first in January, 1933 (nine months after his insurance ceased), and they had reported at the time to the insurance company that he had hardening of the arteries and high blood pressure; that he was not then able to do ordinary labor, and "we estimate this man to be totally and permanently disabled." The best these professional witnesses could do for the plaintiff was, "the chances are the man could have been sick quite awhile before I examined him. His blood pressure wouldn't have been high just suddenly." By the phrase "quite awhile" Dr. Pickelsimer meant "he could have been sick nine months prior to that time." He testified that the insured "is not able to perform manual labor or ordinary work" at the time he testified. Dr. Prichard examined him in March, 1934, and had done so three or four times in the previous five or six months and testified to his bad physical condition due to an enlarged heart and thickened wall. His testimony related to the insured's condition at the time of the trial.

It will be observed that the plaintiff failed to establish that he was totally or permanently disabled at the time his policy was automatically canceled on April 1, 1932.

Wherefore, the judgment is reversed.
Whole court sitting.